Maria **VENEGAS–HERNANDEZ,**
et al., Plaintiffs,

v.

**PEER, et al., Defendants.**

Nos. CIV.01–1215, CIV.01–2186 JAF.

United States District Court,
D. Puerto Rico.

Sept. 11, 2003.

Heath W. Hoglund, Samuel F. Pamias–Portalatin, San Juan, PR, for Plaintiffs.

Barry I. Slotnick, Jacques M. Rimokh, Loeb & Loeb, LLP, New York City, Francisco A. Besosa, Adsuar, Muniz, Goyco & Besosa, San Juan, PR, Angel N. Caro–Padilla, Trujillo Alto, PR, for Defendants.

## OPINION AND ORDER

FUSTE, District Judge.

Plaintiffs, María Venegas–Hernández, Rafael Venegas–Hernández, Yeramar Venegas–Velázquez and Guillermo Venegas–Lloveras, Inc., ("Plaintiffs"), bring the present complaint against Defendants Peer, a/k/a Peer International Corporation and/or Southern Music Company; ACEMLA de Puerto Rico, Inc. ("Defendant ACEMLA"); Latin American Music Company ("Defendant LAMCO"); Luis Raúl Bernard ("Defendant Bernard"); José L. Lacomba ("Defendant Lacomba"); Lucy Chávez–Butler ("Defendant Chávez–Butler"); and unnamed individuals and corporations (collectively "Defendants"). *Docket Document No. 1.* Plaintiffs allege copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. §§ 101–513 (1996 & Supp.2003). Plaintiffs request monetary and injunctive relief, as well as attorney's fees. *Id.*

Applying *res judicata,* we granted Plaintiffs' motion for partial summary judgment, finding that the state court determined that Plaintiffs are owners of Decedent's copyright. *Docket Document No. 33.* However, we found that the state court did not review the issue of copyright renewal, and we held that this issue was not precluded by the state court's determination.

On July 17, 2003, we bifurcated the trial into two non-jury trials on July 21, 2003 and September 9, 2003. The first trial, the subject of the opinion here, was limited to determining the ownership of the renewal rights. We hereby render the opinion of the court.

## I.

### *Factual and Procedural Synopsis*

Unless otherwise indicated, we have gathered these facts from Plaintiffs' motion for summary judgment and Defendants' opposition. *Docket Document Nos. 33, 35.*

Defendant LAMCO is a New York corporation authorized to do business in Puerto Rico. Defendant ACEMLA is a corporation registered with the Puerto Rico Department of State. Both Defendant LAMCO and ACEMLA are engaged in the representation of authors and composers through the registration and protection of their copyrights. Defendant LAMCO and ACEMLA grant licenses to the copyrighted work of their represented composers and authors, and, *inter alia,* demand and collect royalty payments. Defendant Bernard is the president of Defendants LAMCO and ACEMLA.

Composer Guillermo Venegas–Lloveras ("Decedent") passed away on July 23, 1993. Defendant Lucy Chávez–Butler was married to Guillermo Venegas–Lloveras and is Venegas–Lloveras' widow. Defendant Chávez–Butler is presently married to Defendant Lacomba.

Plaintiffs Rafael Venegas–Hernández, María Venegas–Hernández, Guillermo Venegas–Hernández, and Yeramar Venegas–Velázquez are the children and heirs of Guillermo Venegas–Lloveras.

On October 20, 1997, Defendant Chávez–Butler sued the present plaintiffs in the Superior Court of Arecibo, requesting that the trial court determine her participation in Decedent's estate for the purpose of

terminating the community property that existed between Defendant Chávez–Butler and Plaintiffs. *Docket Document No. 33, Exh. 1.* Plaintiffs answered the complaint, and offered several affirmative defenses, alleging, *inter alia*, that the copyrights of the Decedent's songs were not community property according to both local law and the Federal Copyright Act. Plaintiffs also filed a counterclaim alleging that Defendant Chávez–Butler had been unlawfully licensing and managing the Decedent's copyrights. On September 22, 1999, the Superior Court issued an Opinion, finding that the rights to the Decedent's musical work belonged to his children. The court also concluded that it had no jurisdiction over the Plaintiffs' copyright claims. Defendant Chávez–Butler appealed the decision, which was affirmed by the Court of Appeals on January 28, 2000.

On February 2, 2001, Plaintiffs filed the present claim requesting injunctive and monetary relief premised on copyright infringement. *Docket Document No. 1.* On March 22, 2002, Plaintiffs filed a motion for summary judgment, *Docket Document No. 33*, averring that a state court had already determined that Plaintiffs are the rightful owners of Venegas–Lloveras' songs, and that we are precluded from revisiting this issue by *res judicata.* Specifically, Plaintiffs assert that the Superior Court decision fully resolved the issue of copyright ownership in this case. Defendants LAMCO, ACEMLA, Bernard, Chávez–Butler, and Lacomba opposed the motion, arguing that the state court specifically declined to determine ownership over the copyright rights because the Federal Copyright Act preempted review. *Docket Document No. 35.* They also argued that Section 304 of the Copyright Act grants Defendant Chávez–Butler an interest in the renewal rights of the Decedent's songs, and that this issue was not resolved by the state courts. *Id.*

On June 23, 2003, we issued an Opinion and Order. *Docket Document No. 50.* We found that the state courts had determined who owned the Decedent's copyright bequest. *Id.* However, we also held that the state court had not disposed of the renewal issue. *Id.* We deferred the ultimate determination over the parties' right to copyright renewals, finding that the paucity of factual development on the renewal issue preempted our review. *Id.*

In their pretrial order and during trial, Plaintiffs averred that Defendant Chávez–Butler did not have any rights to the copyright renewals. They argued (1) that Defendant Chávez–Butler assigned her renewal rights, (2) that Defendant waived her Section 304 arguments by failing to develop them in state court, and that this court is consequently barred from considering the Defendant's arguments, and (3) that the Decedent could and did determine the distribution of the renewals through his testament. Further, Plaintiffs contend that, even if we were to find that Defendant Chávez–Butler has been granted a right in renewal, the renewal rights should be distributed equally amongst the parties, leaving Defendant Chávez–Butler with only a one-fifth share of the renewal rights.

Defendant LAMCO counters (1) that Defendant Chávez–Butler did not assign her renewal rights through agreement, (2) that Defendant Chávez–Butler did not waive her renewal rights claims, and that (3) under the renewal statute, Defendant Chávez–Butler is entitled to a fifty percent share of the renewal rights.

## II.

### *Analysis*

### A. *Res judicata & Collateral Estoppel*

Plaintiffs aver that the state courts determined that Defendant Chávez–Butler

transferred her renewal rights through an agreement with Plaintiffs. Plaintiffs cite the state court's averment that "[a]s it well appears in the testament executed by him and in the agreement subscribed by the parties with regard to the division of the inheritance, the musical work in question belongs to the children, instituted as heirs in the same." *Docket Document No. 33.* Plaintiffs contend that this shows that the decision of the Puerto Rico courts was that "the agreement as well as the inheritance transferred all copy rights to the Venegas siblings." *Trial Transcript* at 82. Therefore, they argue, a review of this issue of renewals here is barred by *res judicata.* Alternatively, they contend that Defendant was obliged to reference her renewal rights during the state court proceedings, and her failure to do so resulted in waiver of her right to forward those arguments here.

■■■ Under the principle of *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from re-litigating issues, both those issues which could have been litigated and adjudicated in a previous suit, as well as those actually litigated and adjudicated. *Mercado Riera v. Mercado Riera*, 100 D.P.R. 940, 951 (1972). We must defer to Commonwealth law when determining whether a local judgment carries a preclusive effect in a federal forum. *Oliveras v. Miranda Lopo*, 800 F.2d 3, 6 (1st Cir.1986) (citations omitted); *see also Migra v. Warren City School Dist. Bd. of Ed.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) (holding that "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered"). Under Puerto Rico law, "it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the

most perfect identity between the things, causes, and persons of the litigants, and their capacity as such." 31 L.P.R.A. § 3343 (1990). In our June 2003 Opinion and Order, we found that the parties in both the state and the present case are the same, and that the state court decision was final and unappealable, thus complying with two of the three prongs of the tripartite *res-judicata* test. *Docket Document No. 50.*

We also found that the state court had explicitly declined to review issues connected to the federal Copyright Act, since it found itself without jurisdiction. *Id.* By its own language, the text of the state court's opinion does not extend further than the Decedent's actual ownership rights to his original copyright and vested renewals. Further, the state court stated that "[decedent's] musical work belongs to his children, instituted as heirs in the same," as shown by "the testament executed by him and in the agreement subscribed by the parties with regard to the *division of the inheritance.*" *Docket Document No. 31* (emphasis added). Thus, the state court did not consider the agreements as extending further than decedent's ownership. Framed as it was, the state court decision extended only to a determination of those rights that resided with the Decedent upon his death.

■■■ Plaintiffs' arguments reference *res judicata*, but also seemingly incorporate the doctrine of collateral estoppel. Collateral estoppel is related to *res judicata*, but its focus is narrower. The doctrine of issue preclusion, or collateral estoppel, prevents re-litigation in a later suit of an issue of fact or law necessary to a final judgment in a prior suit on a different cause of action. 18 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 132.01 (3d ed.2000). In the case at bar, as a matter of law, the state court need not have deter-

mined the issue of renewal rights to determine that Plaintiffs held the rights to the original terms of ownership as bequeathed by the Decedent. The rights to the original copyrights exist independently of renewal rights, as explained extensively in our previous Opinion and Order. Inasmuch as Plaintiffs are forwarding a collateral estoppel argument, we find Plaintiffs' collateral estoppel arguments unavailing.

■ Finally, Plaintiffs claim that any claim to renewal rights made by Defendant had to be made in the local court, averring that Defendant effectively waived her claim to renewal rights. Again, Plaintiffs revisit their *res-judicata* argument through the related doctrine of claim-splitting. It is well established under Puerto Rico law that a litigant may not raise in a second case claims that could have been litigated and adjudicated in a previous case. *Asociacion de Condominos v. Trelles Reyes,* 120 D.P.R. 574, 579–80 n. 3 (1988); *Figueroa v. Banco de San Juan,* 108 D.P.R. 680, 687 (1979); *Pagan Hernandez v. Universidad De Puerto Rico,* 1978 WL 48824, 107 D.P.R. 720, 732–33 (1978). The prohibition against claim-splitting is consistent with *res judicata*'s purpose of protecting a party from the hardship of being forced to defend successive lawsuits arising out of the same matter. *Futura Development Corp. v. Centex Corp.,* 761 F.2d 33, 45 (1st Cir.1985). Thus, an essential requisite of a claim-splitting challenge is that both the state and the federal suit arise from the same facts.

As stated previously, *supra,* the genesis of the state court suit was to determine the ownership rights arising out of the Decedent's will. Defendant Chávez–Butler, the plaintiff in the state forum, filed a declaratory judgment action to decide whether the Decedent's songs were community property. While we find that the issue of ownership of decedent's songs by

bequest and the issue of renewal rights which belonged to the parties are sufficiently different to defeat Defendant's claim-splitting argument, we find another fact equally dispositive. Then-plaintiff Chávez did attempt to raise the issue of Section 304. *Docket Document No. 31.* The Arecibo state court refused to deal with the Copyright Act claiming lack of jurisdiction, a decision affirmed by the Puerto Rico Circuit Court of Appeals. Given the state court's explicit abstention from entertaining rights under federal law, we simply cannot find that Defendant Chávez–Butler waived her renewal-rights' argument.

## B. *Constitutionality of the Copyright Act*

■ Plaintiffs contend that Congress overstepped its boundaries in enacting the renewal provisions of the Copyright Act. The Constitution of the United States grants Congress the right "[t]o promote the Progress of Science and useful Arts and the useful acts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries ..." U.S. CONST. Art. I, Sec. 8.

Plaintiffs hang their hat on the Constitutional language which secures rights to "Authors and Inventors." They aver that by granting renewal rights which had the possibility of conflicting with a deceased author's testamentary intent, Congress overstepped its constitutionally-granted power of granting rights to authors and inventors. As such, they aver, this court should honor the testamentary intent of the Decedent. Plaintiffs cite Supreme Court cases which they contend support the view that, notwithstanding the explicit terms of Section 304, testamentary intent trumps the provisions of the renewal statute.

Plaintiffs' arguments fail because they all depart from the same premise: That the Decedent had a copyright property right independent of the Copyright Act. However, as has been made clear, the "right to obtain a renewal copyright and the renewal copyright itself exists only by reason of the Act and are derived solely and directly from it." *Miller Music v. Daniels,* 362 U.S. 373, 375, 80 S.Ct. 792, 4 L.Ed.2d 804 (1960). Plaintiffs cite "testamentary freedoms." However, the rights to renewal here do not arise from the Plaintiffs' testament, but from an explicit right granted by the Copyright Act after the death of an author prior to vesting. 17 U.S.C. § 304. Plaintiffs have been granted a right to renewal here by the same statutory provisions that they are, in effect, asking to void in preference of testamentary intent. We note that, prior to the passage of revisions to the Copyright Act, the death of an author prior to the vesting of renewal rights would result in the release of the work to the public domain. *See Fred Fisher Music Co. v. M. Witmark & Sons,* 318 U.S. 643, 647–51, 63 S.Ct. 773, 87 L.Ed. 1055 (1943) (the changes in the Copyright Act "extended the length of the original term and gave the author's widow and children that which theretofore they did not possess, namely, the right of renewal to which the author would have been entitled if he had survived the original term."), *see also* Dorothy M. Schrader, VESTING DATE OF THE RENEWAL COPYRIGHT INTEREST, 19 Bull. Copyright Soc'y U.S.A. 282, n. 18a, 283–84 (1972). In essence, given the Decedent's death prior to vesting, there is no proprietary right to the copyrights in either Defendant Chávez–Butler or the Plaintiffs unless these are garnered through operation of Section 304.[1]

## C. *Agreement between Plaintiffs and Defendant*

Plaintiffs aver that Defendant Chávez–Butler entered into an agreement during meetings held with Plaintiffs in 1995 and 1996 which granted Plaintiffs the rights over not only the Decedent's original copyrights, but Defendant Chávez–Butler's renewal rights.

Defendants disagree, averring that the agreement did not divest Defendant Chávez–Butler over her right to renewals.

### 1. *The Will*

From the evidence submitted to the court, the Decedent divided his estate so

---

1. Plaintiffs' other arguments are meant to suggest that Supreme Court cases have found that testamentary intent controls renewal rights. A review of the Plaintiffs' cases reveals that Plaintiffs have italicized segments with language reminiscent to that of a bequest, hoping to elevate the meaning outside of the context of the case. For example, Plaintiffs cite *Fred Fisher Music,* 318 U.S. at 650, 63 S.Ct. 773, "[t]he Act of February 3, 1831, 4 Stat. 436, amended the 1790 Act in two important respects: the original term was increased from fourteen to twenty-eight years, and the renewal term, although still only fourteen years long, could pass to the author's widow or children if he did not survive the original term." *Id.* at 650, 63 S.Ct. 773. Focusing on the word "pass", Plaintiffs state that "[t]he way, of course, that an author's property passes to his heirs is through his estate under the terms of his will or through state laws of intestate succession." *Docket Document No. 61.* Similarly, citing *De Sylva v. Ballentine,* 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1956), Plaintiffs cite the court as stating that "the widow and children of the author succeed as a class." *Id.* at 580, 76 S.Ct. 974. Plaintiffs contend that "[a]s used in this context, 'succeed' means inherit." *Docket Document No. 61.* Rather than belabor the point, we simply note that the Plaintiffs' asseverations are unpersuasive given the context of the findings in the cases themselves, and the overwhelming precedent establishing that renewal rights are statutory rights independent of the author's testament. *See Docket Document No. 50.*

that Defendant Chávez–Butler was entitled to 33%, Plaintiff María Venegas was entitled to 41.67%, Plaintiff Yeramar Venegas was entitled to 8.33%, Plaintiff Guillermo Venegas was entitled to 8.33%, and Plaintiff Rafael Venegas was entitled to 8.33%. *Trial Exhibit 4.* The will stated that Defendant Chávez–Butler's percentage of the estate would be paid through a house in the town of Quebradillas, Puerto Rico ("Quebradillas house"). At the time of death, as per the Proposal submitted by Plaintiffs, the community property of the Venegas–Chávez marriage consisted of two houses (the "Quebradillas house" and the "Round Hill house"), the furniture inside the houses, a beauty parlor, a Cadillac automobile, and bank accounts. *Trial Exhibit 4.* Plaintiff María Venegas stated that the estate has yet to be distributed. *Trial Transcript at 8.*

### 2. *The Proposal and Meeting*

On September 20, 1995, Plaintiffs sent Defendant Chávez–Butler a Proposal which was meant to "work on the matters that remain to conclude the distribution of [the Decedent's] estate." *Trial Exhibits 2, 4.* The proposal states that "[i]n accordance with this proposal, whatever [Defendant Chávez–Butler] receives from the estate will be credited to the Quebradillas house." *Id.* Further, the Proposal states that "to the extent that the will states that [Defendant Chávez–Butler] is awarded the Quebradillas house in payment of her part of the estate, it technically violates the law if it exceeds the maximum allowable by law (33%) to an heir who is not the Decedent's child." *Trial Exhibit 8.*

The Proposal lists items with an accompanying valuation, although many of the valuations were left blank.[2] *Trial Exhibit 4.* Under a heading of "Values of Marital Gains Property," the proposal lists the Quebradillas house as "Pertain[ing] to [Defendant Chávez–Butler] Pursuant to the Will." Under "Disposal Pursuant to this Proposal," Plaintiffs listed, *inter alia,* another property ("Round Hill house"), a "Beauty Parlor (Business)", furniture for the Quebradillas and Round Hill houses, a Cadillac automobile, and "Music Income." *Id.* Under "Pending Disposition," Plaintiffs listed various paintings, drawings, books, records, and decalogues. *Id.*

Under "Non–Marital Gains Assets," Plaintiffs listed, *inter alia,* "Memorabilia," "Paintings by G. Venegas," "Musical Works," and "Literary Works." *Id.*

On March 22, 1996, Defendant Chávez–Butler and Plaintiffs signed minutes for a "Meeting of the Estate of Guillermo Venegas." *Trial Exhibit 8* ("March Minutes"). The March Minutes state, *inter alia,* that "[Defendant] agreed to accept siblings' proposal for distribution of assets." *Id.* Further, "[t]he art assets (music and literature) will be passed on to the sibling heirs, as provided in the proposal." *Id.* The March Minutes further address the remaining "marital gains" assets in the Proposal, stating that Defendant Chávez–Butler would provide documentation on the furniture, Cadillac car, and the bank accounts. *Id.*

### 3. *Hill & Range Songs v. Fred Rose Music*

■ As stated previously, the "right to obtain a renewal copyright and the renewal copyright itself exists only by reason of the Act and are derived solely and directly from it. *Miller Music v. Daniels,* 362 U.S. 373, 375, 80 S.Ct. 792, 4 L.Ed.2d 804 (1960). Copyrights for works created before 1978 persist for an original term of

---

2. The proposal states that "[t]he ... list of values may be incomplete. It is [Defendant Chávez–Butler's] responsibility to complete it as may be necessary." *Trial Exhibit 4.*

twenty-eight years and for an additional renewal term of sixty-seven years. See 17 U.S.C. § 304(a)(1). The renewal term "creates a new estate," *G. Ricordi & Co. v. Paramount Pictures, Inc.,* 189 F.2d 469, 471 (2d Cir.1951), in order to permit "the author, originally in a poor bargaining position, to renegotiate the terms of the grant once the value of the work has been tested." *Stewart v. Abend,* 495 U.S. 207, 218–19, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990). The author may assign his interest in the copyright renewal term during its original term, but the assignment is valid only if the author is alive at the start of the renewal term. *See Miller Music Corp. v. Charles N. Daniels, Inc.,* 362 U.S. 373, 374–75, 80 S.Ct. 792, 4 L.Ed.2d 804 (1960) (the assignment "is valid against the world, if the author is alive at the commencement of the renewal period."). If the author dies before the renewal term vests, the author's statutory successors (widow, widower, children, executors or next-of-kin) obtain the renewal term, and any prior assignment by the author is not binding on them. *See* 17 U.S.C. § 304(a)(1)(C). "These results follow not because the author's assignment is invalid but because he had only an expectancy to assign . . . . Until [the renewal period] arrives, assignees of renewal rights take the risk that the rights acquired may never vest in their assignors." *Miller Music,* 362 U.S. at 378, 80 S.Ct. 792; *see also Capano Music v. Myers Music, Inc.,* 605 F.Supp. 692, 695 (S.D.N.Y.1985) ("[U]ntil the renewal period arrives, the renewal rights are not vested in anyone. The most anyone can claim is a mere expectancy or contingent interest.").

■ As discussed extensively in our Opinion and Order, *Docket Document No. 50,* Defendant Chávez–Butler's "interests in the renewal terms of her husband's copyrights [are] not assets of the estate of her deceased husband. Her interests [are] statutory rights created by copyright law." *Hill & Range Songs v. Fred Rose Music,* 570 F.2d 554, 557 (6th Cir.1977). Since copyright renewal terms are distinct estates that can be transferred or retained independently from the original term, transfers of copyright interests do not automatically convey the renewal term, for "there is a strong presumption against the conveyance of renewal rights." *Corcovado Music Corp. v. Hollis Music, Inc.,* 981 F.2d 679, 684 (2d Cir.1993); *see also* 2 M. NIMMER, NIMMER ON COPYRIGHTS, § 9.06 at 9.68–9.69 [hereinafter "Nimmer"] (observing that courts "have been hesitant to conclude that a transfer of copyright even if it includes a grant of 'all right title and interest' is intended to include a transfer with respect to the renewal expectancy"). However, courts have found that "general words of assignment can include renewal rights if the parties had so intended." *Venus Music Corp. v. Mills Music, Inc.,* 261 F.2d 577, 578 (2d Cir.1958). Use of the particular word "renewal" is not necessary to transfer renewal rights. Transfers using the words "forever" and "hereafter", *see Corcovado,* 981 F.2d at 685, and "perpetual", *see P.C. Films Corp. v. MGM/UA Home Video Inc.,* 138 F.3d 453, 457 (2d Cir.1998), have been held to convey the renewal term copyright.

■ We note that, in any search for the meaning of an instrument, its terms are to be interpreted and their legal effects determined by consideration of the agreement as a whole. *Vreeland v. Federal Power Comm'n,* 528 F.2d 1343 (5th Cir. 1976). Furthermore, "[i]n case of an ambiguity [in an agreement] it must be resolved against divestment of property rights belonging to a widow, which are not part of the assets of the estate." *Hill & Range Songs v. Fred Rose Music,* 570 F.2d 554, 557 (6th Cir.1978).

At the time of the execution of the agreements, Defendant Chávez–Butler did not know about her expectancy in renewal rights. Similarly, Plaintiffs testified that they did not know of the existence of renewals. Plaintiffs aver, however, that their agreement was intended to divest Defendant of all her interests in the music, and proffer that they believed that the music was their exclusive property anyway, as per the testament and their father's intent. The evidence advanced by Plaintiffs militates against that conclusion.

First, by its own terms, the Plaintiffs' Proposal was meant to dispose of "the matters that remain to conclude the distribution of the estate," and is captioned "Estate of Guillermo Venegas, Proposal." *Trial Exhibit 4*. Further, the Proposal makes no mention of copyrights, renewals, and does not refer to Defendant Chávez–Butler's separate property. Further, according to Plaintiffs, the Decedent's "musical works" were classified as the Decedent's separate property, and as such were not subject to the Proposal's partitionment of the Decedent's estate. Finally, at the time, both Defendant and Plaintiffs were claiming the Decedent's interest in the original copyrights, a conflict which ultimately became the subject of Defendant Chávez–Butler's declaratory action in the state courts. *Trial Transcript at 69*. Given these facts, the 1995 Proposal between the parties suggests an intent to distribute the Decedent's interests and assets, not their individually-accrued renewal interests in the music.

In *Hill & Range Songs, Inc. v. Fred Rose Music, Inc.*, 570 F.2d 554 (6th Cir. 1978), the Sixth Circuit rejected such an argument. In *Hill & Range*, a widow executed an "Agreement Upon Distributed Share of Estate," which provided that the widow relinquished any share in the Decedent's estate in return for $30,000. 403

F.Supp. at 431. The principal issue became whether or not the widow, by entering into the agreement, was divested of her rights to the renewal terms of the copyrights. *Id.* at 430.

After reviewing the agreement, the court held that, while it may have been possible for the widow to assign her contingent expectancy in the Decedent's copyright renewal by use of general language, the renewal rights were not conveyed by the agreement. The court noted that the agreement, by its own language, purported to deal with the Decedent's estate while the renewal rights were the widow's separate property by operation of the renewal statute. The court found it salient that the funds to be paid to the widow were funds of the estate, that no wording in the agreement or during the meetings leading to the agreement referred to the separate assets of the widow, that the agreement made no provision as to where the renewal expectancies were to vest and that none of the parties know about the existence of renewal rights. *Id.* at 432–33.

We find the *Hill & Range* factors to be virtually indistinguishable from the ones in the case at bar. As in *Hill & Range*, the parties freely admitted that they did not know about the existence of renewal rights. The Proposal, by its own terms and caption, was meant to apportion the Decedent's estate. *Trial Exhibit 4*. Further, the Quebradillas house which Plaintiffs claim was meant as a payment for Defendant Chávez–Butler's separate property was in fact community property and a subject of the will. Plaintiffs proffer arguments against the construction of renewal rights, see subsection B, *supra*, but fail to adequately explain how a Proposal dealing with the Decedent's estate also conveyed Defendant Chávez–Butler's separate property interest. Therefore, it is clear from the factual scenario here that, as in *Hill &*

*Range,* "the [Proposal] was not intended to, and thus did not affect the separate assets of [Defendant Chávez–Butler]." *Id.* at 432.

### 4. *Contract law*

 We note that our analysis would be the same if we applied substantive contract law. The interpretation of a contract is a substantive area of the law which is governed by articles 1233 and 1234 of the Civil Code of Puerto Rico. *See Adria Intern. Group, Inc. v. Ferre Development, Inc.,* 241 F.3d 103, 109 (1st Cir. 2001); *Marina Industrial., Inc. v. Brown Boveri Corp.,* 114 D.P.R. 64, 72 (1983). Puerto Rico law provides that "[i]f the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed. If the words should appear contrary to the evident intention of the contracting parties, the intention shall prevail." 31 L.P.R.A. § 3471.

Puerto Rico's parol evidence rule allows for extrinsic evidence concerning the terms of an ambiguous agreement.[3] *See Adria Intern. Group,* 241 F.3d at 111. "In order to judge as to the intention of the contracting parties, attention must principally be paid to their acts, contemporaneous and subsequent to the contract." 31 L.P.R.A. § 472.

Thus, under the prevailing interpretation in this Circuit, courts are required "to ignore [parol] evidence 'when the agreement … is clear and unambiguous.'" *Borschow Hosp. & Medical v. Castillo,* 96 F.3d. at 15 (*citing Mercado–Garcia v. Ponce Fed. Bank,* 979 F.2d 890, 894 (1st Cir.1992)). When the document leaves doubts as to the intentions of the parties, the court must look beyond the literal terms. *See Catullo v. Metzner,* 834 F.2d 1075, 1079–80 ·(1st Cir.1987) (holding that the Puerto Rico Rules of evidence exclude extrinsic evidence concerning the terms of an agreement only when the agreement is clear and unambiguous). "The only terms which can be considered to be 'clear' are those which in themselves are sufficiently lucid to be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation, and without requiring for their understanding any reasoning or illustration susceptible to challenge." *Id.* (citing *Sucn. Ramirez v. Tribunal Superior,* 1959 WL 13587, 81 D.P.R. 357, 358 (1959)). However, Puerto Rico law provides that "[t]he interpretation of obscure stipulations of a contract must not favor the party occasioning the obscurity." 31 L.P.R.A. § 3478 (1990).

 The Proposal here was drafted by Plaintiffs. *Trial Exhibit 4.* Plaintiffs aver that, through the Proposal, they granted Defendant Chávez–Butler an interest in the house in exchange for her transferral of the copyrights. The Proposal by its own terms disposed of the division of the

---

**3.** Puerto Rico's parol evidence rule provides: When in an oral or written agreement, either public or private, all the terms and conditions constituting the true and final intention of the parties have been included, such agreement shall be deemed as complete, and therefore, there can be between the parties, or successors in interest, no evidence extrinsic to the contents of the same, except in the following cases:
(1) Where a mistake or imperfection of the agreement is put in issue by the pleadings;

(2) Where the validity of the agreement is the fact in dispute. This rule does not exclude other evidence of the circumstances under which the agreement was made or to which it is related such as the situation of the subject matter of the instrument or that of the parties, or to establish illegality or fraud.
32 L.P.R.A.App. IV, R. 69(B) ("Rule 69(B)").

Decedent's marital gains, or community, property. As stated in the proposal, the Decedent's portion of the Quebradillas house was bequeathed by the Decedent's will to Defendant Chávez–Butler, and "whatever [Defendant Chávez–Butler] is awarded from the estate will be credited to the Quebradillas house." *Trial Exhibit 4.* The Proposal itself does not mention copyrights. *Id.*

Plaintiffs María Venegas and Rafael Venegas–Hernández testified that at the time of the drafting of the proposal, Plaintiffs believed that the Decedent's musical works were not marital gains property to which Defendant Chávez–Butler had a right. Plaintiff Venegas also testified that she believed that through the Proposal, Defendant Chávez–Butler was transferring all her rights in the music. *Trial Transcript* at 19, 34. However, when asked about the non-marital gains assets, Plaintiffs testified that they had been informed that the music itself was a private or proprietary asset which did not become part of the community property to which Defendant Chávez–Butler had a right. *Id.* at 11, 39. Further, she testified that she understood the non-marital gains assets included all the rights to the Decedent's music. *Id.* at 11, 17, 39.

From the very terms of the Proposal, any rights over the Decedent's work were not part of the estate to which Defendant Chávez–Butler had a right. Plaintiffs' testimony confirms that conclusion. The court fails to see how the Proposal constituted a transfer of any of Defendant Chávez–Butler's separate renewals when, by Plaintiffs' own averments, these were not included in the Proposal as part of the marital gains/community property assets to which Defendant Chávez–Butler had a right. At most, the Proposal seemingly confirmed Defendant Chávez–Butler's acquiescence to the proposition that those ownership rights bequeathed by decedent were private property. Plaintiffs do not explain the contradiction in their own arguments, and we need not ruminate on a way to untangle them.

Finally, Plaintiffs seemingly argue that Defendant Chávez–Butler necessarily must have given up her independent renewal rights through the proposal, pointing to the value of the Quebradillas house. They contend that the Proposal is otherwise inexplicable given the value of the Quebradillas house, asserting, in essence, that they would not have relinquished their allegedly majority interest in the Quebradillas house through the Proposal had it not been for the expectation that all possible rights which accrued to Defendant Chávez–Butler were thusly transferred to them.

A brief review of Puerto Rico community property law is in order. In the case of a legally-married couple, personal property is presumed to be jointly owned in equal proportions, *see* 31 L.P.R.A. §§ 3621, 3647, with few exceptions. The Civil Code specifically states that neither husband nor wife may dispose by testament of more than his or her half of the conjugal partnership. 31 L.P.R.A. § 3673 (1990).[4] Therefore, a surviving spouse receives half

4. We note that the Quebradillas house is, from all evidence in front of the court, community property. The Proposal lists the house in the "marital gains" section. *Trial Exhibit 4.* Furthermore, the minutes in which Defendant Chávez–Butler seemingly agreed to accept the Plaintiffs' Proposal note that "[c]oncerning the rent for the use of the Que-bradillas house: it was agreed that since the *half of the Quebradillas house that belonged to Guillermo Venegas will be passed on to [Defendant Chávez–Butler] as her share of the inheritance,* the payment of rent thereon becomes irrelevant ...." *Trial Exhibit 8* (emphasis added).

of the community property at the death of her husband by virtue of ownership, not inheritance. Here, it is admitted that Defendant Chávez–Butler received an additional 33% of the community property through the Decedent's will.

Against this juridical backdrop, we note that the "marital gains" in the Proposal included not only the Quebradillas house, but also included the Round Hills house, furniture, a car, and a business. We note further that Plaintiff María Venegas, in a meeting in January 1996, *Trial Exhibit 6*, requests that Defendant Chávez–Butler know her options regarding the provisions of the will. The minutes state that, according to attorneys presumably consulted by Plaintiffs, Defendant Chávez–Butler had two options regarding the provisions made in decedent's will regarding the Quebradillas house. *Id.* Defendant Chávez–Butler could either "1.[w]aive receiving the house in payment of the inheritance[, or] 2.[k]eep the house, without paying for it, as payment of the inheritance." *Id.*

We need not determine the actual value of all of the community property or the actual apportionment to the parties herein. Given Plaintiffs' Proposal, Defendant Chávez–Butler's independent entitlement to fifty percent of the community property independent of the Decedent's will, as well as the 33% she was granted in the Decedent's estate in accordance to the Decedent's testament, it is not clear that Plaintiffs' cession of the Quebradillas house must necessarily correspond to Defendant Chávez–Butler's transfer of her renewal rights. Coupled with the fact that the proposal makes no reference to copyrights, that the agreement signed by Plaintiffs does not reference a "house for copyright" exchange, but instead refers to all of the marital gains property in the Proposal, and that previous meetings suggest that Defendant Chávez–Butler could keep the house "as payment of the inheritance," we find that Plaintiffs' arguments are woefully unsubstantiated.

### D. *Proper Distribution of Renewal Rights*

Since we have found that Defendant Chávez–Butler had a right to the renewal rights, we now must determine the distribution of renewal rights.

Plaintiffs note that by operation of the Decedent's last will and testament, his estate was divided so that Defendant Chávez–Butler was entitled to 33%, Plaintiff María Venegas was entitled to 41.67%, Plaintiff Yeramar Venegas was entitled to 8.33%, Plaintiff Guillermo Venegas was entitled to 8.33% and Plaintiff Rafael Venegas was entitled to 8.33%. Plaintiffs aver that "this distribution creates no conflict with the Copyright Act or the Constitution and furthers the purpose of the copyright system. The author deserves the fruit of his labor during his lifetime, and, absent a conflict with the Copyright Act, deserves to decide how those fruits will be distributed upon his death." *Docket Document No. 57*. In the alternative, Plaintiffs aver that all members of the renewal class should share equally as claimants. *Id.*

Defendants, on the other hand, aver that we should follow 17 U.S.C. § 304(c)(2) of the Copyright Act, which deals with termination rights. Defendants suggest that the renewal rights here should be distributed similarly, granting a 50% interest in the renewals to Defendant Chávez–Butler, the remaining half equally amongst Plaintiffs' children. *Docket Document No. 61*.

We are persuaded that the best course of action is to divide the copyright renewal rights amongst the entire class equally. A division according to the Decedent's will would allow a party who has no property right in renewals to inject his intent into what is the statutory property of others.

*See also* Nimmer at § 9.04[A][1](discussing the potentially disruptive effects of allowing state law to dictate the division within a class).

Further, we decline Defendants' invitation to apply the termination provisions in the Copyright Act. We engage in a brief review of termination rights in order to frame the discussion. Prior to the 1976 Copyright Act, the law provided for two copyright terms of twenty-eight years each, an original and a renewal term, for a total of fifty-six years. *See Bourne Co. v. MPL Communications, Inc.,* 675 F.Supp. 859, 860 (S.D.N.Y.1987). The 1976 Act created a third period of protection of nineteen years, an extended renewal term, for a total of seventy-five years. *See* 17 U.S.C. § 304(a)(2)(A). The 1976 Act "correct[ed] the unequal bargaining position of authors, resulting in part from the impossibility of determining a work's value until it has been exploited," by granting authors a right to terminate unprofitable transfers and renegotiate new grants for the extended renewal term with interested publishers. *See* H.R.Rep. No. 1476, 94th Cong., 2d Sess. 124, *reprinted in* 1976 U.S.Code Cong. & Admin. News 5659, 5740. Consequently, the Act allows authors or certain successors provided for in the statute to terminate a preexisting grant after its 56th year, and in effect "reclaim" the copyright for exploitation during the extended renewal term. *See Bourne,* 675 F.Supp. at 859. If the author is deceased, his termination interest can only be exercised by certain statutory successors provided for in the Act subject to the same basic requirements regarding notice of termination that are imposed upon the author. 17 U.S.C. § 304(c)(2) & (4).

Section 304(c)(2) states that "[w]here an author is dead, his or her termination interest is owned, and may be exercised, as follows:

(A) The widow or widower owns the author's entire termination interest unless there are any surviving children or grandchildren of the author, in which case the widow or widower owns one-half of the author's interest.

(B) The author's surviving children, and the surviving children of any dead child of the author, own the author's entire termination interest unless there is a widow or widower, in which case the ownership of one-half of the author's interest is divided among them.

(C) The rights of the author's children and grandchildren are in all cases divided among them and exercised on a per stirpes basis according to the number of such author's children represented; the share of the children of a dead child in a termination interest can be exercised only by the action of a majority of them.

(D) In the event that the author's widow or widower, children, and grandchildren are not living, the author's executor, administrator, personal representative, or trustee shall own the author's entire termination interest."

17 U.S.C. § 304(c)(2).

Defendants urge us to apply the division of 304(c)(2) to the statutory class here. However, Section 304(c)(2) termination rights inhere in the family members of an author who grants a vested renewal right to a third party in the absence of a prior testament. *Id.* If there has been a will, the copyright renewal transfers by testament, and the statutory class does not receive the termination rights.[5] Thus, a

---

**5.** Thus, in *Bourne,* 953 F.2d 774, the heirs of a copyright owner were able to terminate an assignment to a third party because the as-

signment had been made before death of owner. *Id.* at 777–82. The owner had not left the copyright to another by way of a will because

plain reading of the statute reveals that the termination provisions are meant to tackle factual circumstances materially different from the ones at hand. More importantly, perhaps, are the statutory notes attached to Section 304, which state that "[i]t is not clear how the shares of a class of renewal beneficiaries are to be divided under the existing law ....," thus implicitly refusing to adopt the questionably analogous termination provisions within Section 304(c)(2). *See* Nimmer at § 9.04[A][1] n. 6.

As stated in Nimmer,

> On the whole, then, it seems better to look only to the 'four corners' of the Copyright Act in determining such division. Because the Act fails to indicate any internal division for what has been established as a single class, it appears to be more logical to regard all members of the class—widow and children—alike, as equally sharing claimants. Suppose the Act, instead of referring to 'children' had conferred renewal rights upon the author's 'sons and daughters.' If an author left one son and two daughters, it would be odd to conclude that the son's share is equal to the combined share of both daughters. If in such circumstances each son and each daughter would be regarded as entitled to a share equal to those of each other member of the single class of 'sons and daughters,' given that widow and children are also members of a single class, they too should, as individuals, each have an equal share.

*Id.* at § 9.04[A][1].

We, therefore, choose to apply an equitable distribution across the class.

he had transferred the renewal rights long before his death and this allowed the owner's

## III.

### *Conclusion*

In accordance with the foregoing, we find that Defendant Chávez–Butler did not relinquish her renewal rights. We additionally find that the renewal rights should be distributed equitably amongst the statutory renewal class.

**IT IS SO ORDERED.**

heirs to initiate termination pursuant to § 304. *Id.*