*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0042p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

BROADCAST MUSIC, INC.,

*Plaintiff,*

*v.*

No. 02-5766

ROGER MILLER MUSIC, INC.,

*Defendant-Appellant,*

SHANNON MILLER TURNER,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 01-00453—Todd J. Campbell, District Judge.

Argued: December 3, 2003

Decided and Filed: January 28, 2005

Before: SILER, DAUGHTREY, and GIBBONS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Walter Robert Thompson, Nashville, Tennessee, for Appellant. Jay S. Bowen, BOWEN, RILEY, WARNOCK & JACOBSON, Nashville, Tennessee, for Appellee. **ON BRIEF:** Walter Robert Thompson, Nashville, Tennessee, John J. Griffin, Jr., KAY, GRIFFIN, ENKEMA & BROTHERS, Nashville, Tennessee, for Appellant. Jay S. Bowen, Amy C. Martin, BOWEN, RILEY, WARNOCK & JACOBSON, Nashville, Tennessee, for Appellee. John C. Beiter, Robert L. Sullivan, LOEB & LOEB, Nashville, Tennessee, for Amici Curiae.

GIBBONS, J., delivered the opinion of the court, in which SILER, J., joined. DAUGHTREY, J. (pp. 18-19), delivered a separate dissenting opinion.

_____

## OPINION

_____

JULIA SMITH GIBBONS, Circuit Judge. Plaintiff Broadcast Music Inc. ("BMI") filed this interpleader action to determine what portion of the interpleaded funds it is required to pay to defendant-appellee Shannon Miller Turner and defendant-appellant Roger Miller Music, Inc. ("RMMI"). The interpleaded funds consist of royalties generated from BMI's licensing of certain songs written by country music legend Roger Miller. Turner, a daughter of Miller, is entitled to some of these royalties under the

Copyright Act because the copyrights to the songs at issue were renewed after Miller died, vesting Turner with an interest in these copyrights pursuant to 17 U.S.C. § 304(a). The extent of Turner's interest in these copyrights depends on the magnitude of the interest formerly held by Mary Arnold Miller, Roger Miller's widow, who also obtained an interest in the renewal copyrights pursuant to § 304(a), and by Roger Miller's other surviving children, who likewise obtained interests in the renewal copyrights. Turner argued before the district court that Mary Arnold Miller and Roger Miller's seven children, herself included, all held equal shares in the renewed copyrights and that, therefore, she is entitled to 1/8 (12.5%) of the renewal copyright royalties. RMMI, to which Mary Arnold Miller and all of Roger Miller's children except Turner have assigned their renewal copyright interests, argued that Mary Arnold Miller obtained a fifty-percent interest in the renewal copyrights as Miller's surviving spouse and that Roger Miller's children held equal shares in the remaining fifty-percent of the renewal copyrights, or 7.14% each. The district court found that § 304(a) provides that the surviving spouse and children of an author who originally copyrighted a work share equally in that work's renewal copyright when that copyright is renewed after the author's death. RMMI appeals the judgment of the district court. For the following reasons, we reverse the district court's grant of summary judgment for Turner, grant summary judgment for RMMI, and remand the case for distribution of the interpleaded funds.

## I.

The facts in this case are undisputed. Roger Miller is a Grammy Award-winning legend of country music. Although Miller penned and performed many hit songs, he is most famous for the still-loved "King of the Road." Miller died on October 25, 1992. He is survived by his widow, Mary Arnold Miller, and seven children, including Turner.

This case concerns interests in the renewal copyrights of certain of Miller's works. A preliminary understanding of the renewal copyright scheme is necessary to appreciate the facts of the case. The Copyright Act provides that the copyright to any work copyrighted prior to January 1, 1978, endures for twenty-eight years from the date it was originally secured. 17 U.S.C. § 304(a)(1)(A). Once the twenty-eight year copyright period has expired, the copyright will be renewed for a term of sixty-seven years either by registration or, in the absence of registration, automatically. *Id*. § 304(a)(2)(B). If the copyright is renewed during the author's lifetime, the renewal copyright vests in the author. *Id.* § 304(a)(2)(B); 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 9.04 (2003) (hereinafter "*Nimmer on Copyright*"). If the author is deceased at the time of renewal but is survived by a spouse and/or children, the renewal copyright vests in the surviving spouse and/or children. 17 U.S.C. § 304(a)(2)(B); *see also Nimmer on Copyright* § 9.04[A]. The Copyright Act is silent, however, as to how the renewal copyright interest will be shared between an author's surviving spouse and children, which is the issue before us in this appeal.

Familiarity with some basics of the music industry is also crucial to understanding the nature of the dispute before the court. A person who writes a song often copyrights that song. The songwriter at that point owns 100% of that copyright. Generally, a songwriter assigns all of his interest in a copyrighted song to a music publisher. In return, the publisher agrees by contract to exploit the song on the market and to pay the writer royalties generated by such exploitation. Although arrangements vary by contract, the standard practice is that a publisher retains fifty-percent of the revenue generated by a song's exploitation (known as the publisher's share) and pays the other fifty-percent to the writer of the song (known as the writer's share).

Publishers, in turn, affiliate with performing rights organizations, which license the public performance rights of copyrighted musical compositions on behalf of their affiliates.[1] By affiliating with such an organization, the publisher grants the organization the ability to license the public performance of

---

[1] Writers who do not transfer their copyright interest to a publisher may also affiliate with a performing rights organization. In such instances, the writer receives 100% of the royalties generated from the licensing of her song.

the songs to which the publisher holds the copyright. BMI and the American Society of Composers, Authors and Publishers ("ASCAP") are the two principal performing rights organizations operating in the United States. These organizations pay to their affiliates in the form of royalties a portion of the revenues generated from licensing the public performance of songs. When a publisher affiliates with one of these organizations, it agrees to adhere to the articles and bylaws of the organization, which generally provide that public performance royalties will be divided between the publisher and the writer irrespective of other financial arrangements made between the those two parties. Commonly, writers and publishers agree to be paid their respective shares of performing rights royalties directly by the performing rights organization.

After Roger Miller's death, the copyrights to numerous songs penned and copyrighted by him prior to 1978 were renewed on separate occasions pursuant to § 304(a).[2]  These compositions are the subject of this dispute. Under § 304(a)(2)(B), these renewed copyrights vested in Mary Arnold Miller and Roger Miller's seven children. Mary Arnold Miller conveyed all of her renewal copyright interests[3] to RMMI.[4] Excepting Turner, all of Roger Miller's children also assigned their present and future renewal copyright interests to RMMI.

BMI collected royalties by licensing the songs at issue after the original copyright on each song expired and was subsequently renewed. BMI initially distributed these royalties to RMMI, a BMI affiliate. On February 2, 2001, Turner's attorney wrote BMI a letter requesting that the company pay Turner all royalties collected for the licensing of Miller's songs in which she held a renewal copyright interest commensurate with her interest in those songs. Turner claimed that she held a 12.5% , or 1/8, share in renewal copyrights and that she was thereby entitled to 12.5% of all royalties generated by the songs in which she held such an interest. RMMI disputed Turner's assertion that she owned a 12.5% share in any of the songs at issue. Thereafter, BMI withheld disputed royalties. In a letter to Turner's attorney written Match 6, 2001, BMI suggested that the parties resolve the dispute amicably. The parties failed to do so.

In an effort to determine its obligations under federal law, BMI filed this interpleader action on May 18, 2001, in the United States District Court for the Middle District of Tennessee pursuant to 28 U.S.C. § 1335, seeking a declaratory judgment as to the entitlement of RMMI and Turner to royalties generated from the licensing of Miller's songs. At the time of the complaint, the funds at issue amounted to $30,425.60. This sum represented 12.5% of the publisher's share of the royalties generated, or 6.25% of total royalties. On May 24, 2001, the district court ordered BMI to place those funds in an interest-bearing account. BMI complied with the order. RMMI filed a cross-claim against Turner on June 19, 2001. RMMI argued that Turner's claim for royalties was barred by laches and the three-year statute of limitations set forth in the Copyright Act at 17 U.S.C. § 507(b). Because its position was that Turner was entitled to 7.14% of the total royalties, RMMI did not dispute that Turner was entitled to the interpleaded funds; however, it

---

[2]While it is not exactly clear from the record whether the copyrights at issue were renewed by registration or automatically upon expiration of the original copyright, it appears they were renewed by registration. As copyrights subject to 17 U.S.C. § 304, the original copyrights to all of Miller's songs at issue ran to the end of the calendar year in which they would have otherwise expired. *Id*. § 305. All of the renewal copyrights at issue were registered within one year of the end of the calendar year in which the original copyrights were to expire. Hence, it appears that the copyrights were renewed by registration without resort to the automatic renewal provisions. 17 U.S.C. § 304(a)(1)(C)(i). Consequently, the copyright renewal vested upon the beginning of the renewal term in all parties entitled to the renewal and extension at the time of the application, namely Mary Arnold Miller and Roger Miller's seven children. *Id.*

Also unclear from the record is who actually registered the renewed copyrights. If the registration of the renewed copyright for "Engine Engine Number Nine" is representative of the renewal of the other songs at issue, then Mary Arnold Miller registered the renewed copyrights as widow of Roger Miller.

[3]Roger Miller died testate and bequeathed to Mary Arnold Miller all the copyright interests held by him at death. In addition to her renewal copyright interests, Mary Arnold Miller also transferred these original copyright interests to RMMI.

[4]The sole shareholder, president, and CEO of RMMI is Mary Arnold Miller.

asserted that she was not entitled to a full 12.5% of all royalties. In response, Turner filed a motion to dismiss the interpleader complaint on June 29, 2001. Turner asserted that the case should be dismissed since RMMI conceded that she was entitled to the interpleaded amount. However, after filing the interpleader complaint, BMI began withholding 12.5% of all royalties – both the writer's and publisher's share – generated from the public licensing of the songs at issue and notified the court that it intended to interplead these royalties in addition to the prior interpleaded funds, which consisted only of the publisher's share. The court ordered BMI to interplead these additional total royalties on August 1, 2001, and BMI again complied. As a result, the district court denied Turner's motion to dismiss, noting that – while the parties did not dispute that Turner was entitled to the funds initially interpleaded – the parties did dispute whether she was entitled to a full 12.5% of total royalties.

RMMI then filed a motion for summary judgment on October 4, 2001. RMMI argued that the Copyright Act provides that, when a copyright originally secured by an author prior to 1978 is renewed after the author's death, the author's surviving spouse obtains a fifty-percent share in the renewed copyright, while the author's surviving children obtain equal shares in the remaining fifty-percent. RMMI also asserted that Turner's claim for royalties was barred by the statute of limitations set forth at 17 U.S.C. § 507(b) and by laches. Turner filed her own motion for summary judgment on October 5, 2001, arguing that an author's surviving spouse and children obtain equal shares in any copyright originally secured by the author prior to 1978 and renewed after the author's death. The district court found Turner's proffered interpretation of § 304(a) most persuasive and also determined that the statute of limitations and laches did not bar Turner from recovery. The district court therefore denied RMMI's motion for summary judgment and granted Turner's motion.

On April 22, 2002, RMMI filed a motion requesting that the district court alter or amend its judgment with respect to its disposal of RMMI's statute of limitations and laches claims. RMMI asserted that the court should have found that Turner was barred from recovering royalties from RMMI. The district court denied this motion on May 29, 2002.

RMMI filed a timely notice of appeal on June 6, 2002, appealing the district court's denial of its motion to alter or amend the judgment, the district court's denial of RMMI's motion for summary judgment, and the district court's grant of summary judgment for Turner.

## II.

This court reviews a district court's grant of summary judgment *de novo*. *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 361 (6th Cir. 2001). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Likewise, when a district court denies a motion filed pursuant to Fed. R. Civ. P. 59(e) to alter or amend a grant of summary judgment, we review the denial *de novo*. *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1047 (6th Cir. 2001).

*A. Renewal Copyright Interests*

The principal issue in this case concerns the proper interpretation of the provisions of the Copyright Act dealing with the renewal of copyrights that originally existed on or prior to January 1, 1978. The Act provides that "[a]ny copyright, the first term of which is subsisting on January 1, 1978, shall endure for 28 years from the date it was originally secured." 17 U.S.C. § 304(a)(1)(A). Upon expiration, such copyrights are renewed for an extended term. Renewal schemes vary according to the nature of the work copyrighted. According to 17 U.S.C. § 304(a)(1)(B),

> [i]n the case of– (i) any posthumous work or of any periodical, cyclopedic, or other composite work upon which the copyright was originally secured by the proprietor thereof, or (ii) any work copyrighted by a corporate body . . . or by an employer for whom such work

is made for hire, the proprietor of such copyright shall be entitled to a renewal and extension
of the copyright in such work for the further term of 67 years.

The copyrights for all other works are renewed under another scheme. Under this alternate scheme, "(i) the author of such work, if the author is still living, [or] (ii) the widow, widower, or children of the author, if the author is not living, . . . shall be entitled to a renewal and extension of the copyright in such work for a further term of 67 years." § 304(a)(1)(C). Although the disjunctive language in § 304(a)(1)(C) suggests that either a deceased author's surviving spouse or his children, but not both, have interests in a renewal copyright created after the author's death, Congress has made clear that an author's surviving spouse and children may simultaneously obtain shares in a renewed copyright. The Act states that, when a copyright is renewed pursuant to § 304(a)(1)(C),

> the copyright shall endure for a renewed and extended further term of 67 years, which – (i) if an application to register a claim to such further term has been made to the Copyright Office within 1 year before the expiration of the original term of copyright, and the claim is registered, *shall vest,* upon the beginning of such further term*, in any person who is entitled under paragraph (1)(C) to the renewal and extension of the copyright at the time the application is made*; or (ii) if no such application is made or the claim pursuant to such application is not registered, *shall vest,* upon the beginning of such further term*, in any person entitled under paragraph (1)(C), as of the last day of the original term of copyright, to the renewal and extension of the copyright*.

§ 304(a)(2)(B) (emphasis added). By providing that copyright interests will vest in *any person* entitled to renew and extend the copyright under § 304(a)(1)(C), § 304(a)(2)(B) necessarily provides that renewal copyright interests can be held simultaneously by numerous parties.[5] As surviving spouses and children are entitled to renew and extend copyrights when an author is deceased, *id.* § 304(a)(1)(C), it is clear that an author's children and an author's surviving spouse may simultaneously hold ownership interests in renewed copyrights if the author is deceased at the time of renewal. *Id.* § 304(a)(2)(B); *see also DeSylva v. Ballentine*, 351 U.S. 570 (1956) (construing the Copyright Act prior to the adoption of § 304(a)(2)(B) and holding that an author's surviving spouse and children are each entitled to shares in a copyright renewed after the author's death). What is unclear from the statute, however, is the exact proportion of the renewal interest that vests in each eligible party.[6]

The Supreme Court has clarified certain other aspects of these renewal provisions. In *Fisher Music Co. v. W. Witmark & Sons*, 318 U.S. 643 (1943), the Court held that an author can assign renewal copyright interests in his works prior to their vesting at the end of an original copyright term and that he is bound by such an assignment if the renewal copyright vests in him prior to his death. *Id.* at 658-59. For instance, an author can assign both his original and renewal copyright interests at once, even though the renewal copyright has not yet begun, and the author is bound by the assignment if the renewal copyright begins during his life.

In *Miller Music Corp. v. Charles N. Daniels, Inc.*, 362 U.S. 373 (1960), the Court held that the conveyance of a renewal copyright interest by an author prior to the vesting of that renewal copyright

---

[5] We note as well that § 304(a)(2)(B)(ii) provides that copyrights will renew automatically and vest in eligible parties upon renewal even absent formal registration by an eligible party.

[6] The dissent says that it is relying on the plain language of the statute and that the majority opinion's conclusion as to its proper interpretation is a "clear act of judicial activism." Both the reference to the statutory language and the charge of activism are puzzling. The statute does not address the issue of the exact proportion of the renewal interest that vests in each eligible party. Thus the dissent's interpretation is in no way based on the plain language of the statute. Nor can the majority's interpretation properly be described as activist. This case requires us to decide the issue of proportionate interest, an issue about which the statute is ambiguous. A reasoned selection of one of two possible interpretations is simply a resolution of the case, not activism.

interest in him is a mere expectancy or contingency interest. Thus, if the author dies prior to the vesting of the renewal copyright, the party to whom the author conveyed the renewal copyright has no entitlement to that renewal copyright. *Id*. at 375. Rather, when the renewal copyright vests, it will vest in the spouse and children of the author, provided they are living, pursuant to the renewal provisions. *Id*. While the cases clarify certain aspects of the renewal copyright scheme, *Fisher Music* and *Miller Music* do not illuminate how renewal interests should be divided between an author's surviving spouse and children when the renewal copyright vests after the author's death.

RMMI argues for a "disproportionate shares" interpretation of § 304(a) providing that, when a copyright to a work is renewed after the death of the author of the work in question, the surviving spouse of the author obtains a fifty-percent undivided interest in the renewal copyright and that the author's surviving children take the remaining fifty-percent interest in the renewal copyright in equal shares. Turner argues for an "equal shares" interpretation of § 304(a) providing that the interests in copyrights renewed after the death of an author are shared equally among the author's children and the author's surviving spouse. Finding no support in the statute or in its legislative history for the proposition that renewal copyright interests are shared disproportionately, the district court adopted the interpretation offered by Turner. RMMI appeals this determination. This court reviews a district court's statutory interpretations *de novo*. *United States v. Rapanos*, 339 F.3d 447, 450 (6th Cir. 2003).

When construing a legislative enactment, courts are to give effect to the intention of the legislature adopting the statute or provision in question. *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993) (citing *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984)); *Hedgepeth v. Tennessee*, 215 F.3d 608, 616 (6th Cir. 2000) ("The primary rule of statutory construction is to ascertain and give effect to the legislative intent."). To determine legislative intent, a court must first look to the language of the statute itself. *Bd. of Ed. of Westside Cmty. Schs. v. Mergens*, 496 U.S. 226, 237 (1990); *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 164 (1985). If the language of the statute is clear, a court must give effect to this plain meaning. *See Barnhart v. Sigmon Coal, Inc.*, 534 U.S. 438, 451 (2002). In discerning whether a statute offers a plain meaning, a court looks to the language and design of the statute as a whole. *United States v. Ninety-Three Firearms*, 330 F.3d 414, 420 (6th Cir. 2003). Courts are to make every effort to interpret provisions so that other provisions in the statute are not rendered inconsistent, superfluous, or meaningless. *Cafarelli v. Yancy*, 226 F.3d 492, 499 (6th Cir. 2000). If after such an analysis a statute's meaning remains ambiguous, a court may look to the legislative history surrounding the adoption of the statute to aid in its determination of the legislature's intention in enacting the statute or provision at issue. *Mitchell v. Chapman*, 343 F.3d 811, 826 (6th Cir. 2003); *Ninety-Three Firearms*, 330 F.3d at 420; *United States v. Markwood*, 48 F.3d 969, 975 n.7 (6th Cir. 1995) ("[W]hen there is an ambiguous term in a statute, or when a term is undefined or its meaning unclear from the context of the statute, it is our duty to examine the legislative history in order to render an interpretation that gives effect to Congress's intent."). Because § 304(a) is itself silent as to the issue at hand, we look to the statute as a whole to determine if other provisions are instructive as to congressional intent and the proper interpretation of this provision.

*1. Statutory Construction*

Section 304(c) of the Copyright Act provides that the conveyance of an interest in a renewal copyright may, in certain instances, be terminated. According to § 304(c), any conveyance, other than by will,[7] executed before January 1, 1978, by a person entitled to renew and extend a copyright under § 304(a)(1)(C), of a renewal copyright interest related to an original or renewal copyright subsisting on January 1, 1978, is potentially subject to termination. A person who conveys a renewal copyright interest prior to January 1, 1978, may terminate that conveyance pursuant to the provisions of § 304(c). For instance, an author is entitled, after a certain period of time, to terminate any interests in a renewal copyright conveyed by him. *Id*. § 304(c)(1). If an author is dead, § 304(c)(1) provides that the author's right to terminate his own transfer of an interest in a renewal copyright is owned and may be exercised in the following manner:

> (A) the widow or widower owns the author's entire termination interest unless there are any surviving children or grandchildren of the author, in which case the widow or widower owns one-half of the author's interest;
> (B) the author's surviving children, and the surviving children of any dead child of the author, own the author's entire termination interest unless there is a widow or widower, in which case the ownership of one-half of the author's interest is divided among them;
> (C) the rights of the author's children and grandchildren are in all cases divided among them and exercised on a per stirpes basis according to the number of such author's children represented.

To effectuate termination of a transfer of a renewal copyright interest initially made by the author, over fifty-percent of the termination interests must support termination. *Id*. § 304(c)(1). A termination right may be exercised during a period of five years commencing from the end of fifty-six years from the date the copyright was originally secured or commencing from January 1, 1978, whichever is later. *Id*. § 304(c)(1)(D).

Importantly, if a deceased author's surviving spouse and children exercise their right to terminate renewal copyright interests conveyed by the author prior to his death, those terminated renewal copyright interests will revert to all the parties holding a termination interest, including those who did not exercise the right to terminate the transfer renewal rights. *Id*. § 304(c)(6). When the renewal rights revert to the spouse and children after an exercise of the termination interests pursuant to § 304(c)(2), "*they shall vest in those persons in the proportionate shares provided by that clause*." *Id*. § 304(c)(6)(C) (emphasis added). In other words, if a majority of shares of those with an author's termination rights exercise those rights to terminate a grant by the author of renewal interests, a fifty-percent share of the terminated renewal copyright interests will vest in the surviving spouse, and the surviving children will divide the remaining fifty-percent in equal divided shares.

The Copyright Act also provides a process for terminating transfers of any copyright interest executed on or after January 1, 1978.[8] *See id.* § 203(a). Under § 203(a), the surviving spouse and the

---

[7]While an author is alive, only she is entitled to the renewal and extension of a copyright of one of her works, unless she transfers that right. *See* 17 U.S.C. § 304(a)(1)(C)(i). If a copyright enters its renewal period while the author is still alive, the renewed copyright vests in the author, and she may convey her interest in that renewed copyright as she wishes, including by will. *See id*. § 304(a)(2)(B); *see also Nimmer on Copyright* § 9.04. The author's widow or spouse does not automatically obtain any interest in such copyrights. If the author holds the renewal copyright at death but does not convey the copyright by will, the copyright will be conveyed by intestate succession but will nonetheless be free from termination because the conveyance was not executed by the author. *See Nimmer on Copyright* § 11.02[A][3].

[8]For works copyrighted on or after January 1, 1978, Congress abandoned the renewal copyright scheme because of its complexity and instead provided for a system where the copyright endured for the life of the author plus a term of years. 17 U.S.C. § 302(a); *see also Nimmer on Copyright* § 9.02 & .10[A][2]. Hence, for copyrights created after January 1, 1978, there

children of a deceased author may terminate any conveyance of a copyright interest executed on or after January 1, 1978, by the author of the copyrighted work.[9] A surviving spouse owns fifty-percent of the author's termination interest and any surviving children hold equal shares in the remaining fifty-percent of the termination interest. *Id*. § 203(a)(2)(A)-(B). Termination may be exercised only with the support of a majority of the termination interest shares. *Id*. § 203(a)(1). The termination interest may be exercised beginning thirty-five years from the date of the execution of the conveyance and continuing for a period of five years. *Id*. § 203(a)(3). If a majority of termination interest shares vote to terminate an author's grant of an interest in a copyright, the terminated rights revert to the surviving spouse and the author's surviving children proportionate to their termination interest. *Id*. § 203(b)(2). In other words, upon termination, a fifty-percent interest in the terminated copyright would vest in the surviving spouse and the author's surviving children would share the remaining fifty-percent of the copyright in equal shares.

The nature of the copyright interest terminated under § 203 differs from the nature of the copyright interest terminated under § 304(c). The copyright interest terminated under § 304(c) is, by the very language of the provision itself, necessarily related to a renewal copyright. *Id*. ("In the case of any copyright subsisting in either its first or renewal term on January 1, 1978, . . . the exclusive or nonexclusive grant of a transfer or license *of the renewal copyright or any right under it*, executed before January 1, 1978, . . . is subject to termination . . . .") (emphasis added). That termination under § 304(c) pertains only to grants of renewal copyright interests is evident by the manner in which the provision operates as well. Termination under § 304(c) can only be exercised beginning fifty-six years from the date the original copyright was secured, or on January 1, 1978, whichever is later. *Id.* § 304(c)(3). Since the term of copyrights secured on or before January 1, 1978, is only twenty-eight years, *id.* § 304(a)(1)(A), any copyright interest terminated fifty-six years after the institution of the original copyright or later is necessarily an interest related to a renewal copyright.

Distinctively, copyright interests terminated under § 203 may be, but are not necessarily, renewal copyright interests. Whereas § 304(c) implicates only copyrights subsisting on January 1, 1978, for the purposes of § 203(a), only the date of execution of the conveyance – not the date on which the original copyright was subsisting – has significance. Any conveyance of a copyright interest executed on or after January 1, 1978, is potentially subject to termination pursuant to § 203. *Id*. § 203(a). Because copyrights created on or after January 1, 1978, are not subject to the renewal scheme, *see id.* § 302(a), such copyrights will never transform into renewal copyrights and, consequently, transfers of such copyrights will never involve renewal copyright interests. Hence, the termination of conveyances of copyrights that originated on or after January 1, 1978, will not involve the vesting of renewal copyrights. Copyrights originally secured prior to January 1, 1978, on the other hand, are subject to the renewal scheme. *Id*. § 304(a). But § 304(c) only deals with the termination of transfers of the renewal copyrights of such copyrights that are executed prior to January 1, 1978. All transfers of renewal copyrights executed by an author after January 1, 1978, are governed by § 203. Hence, the termination of copyright interests under § 203 may but does not necessarily involve renewal copyright interests. When transfers of renewal copyrights by an author are terminated under § 203, however, those renewal copyrights vest in disproportionate shares between an author's surviving spouse and children, just as is the case under § 304(c).

Section 203 and § 304(c) are the only provisions in the Copyright Act that explicitly provide for how a deceased author's surviving spouse and children shall share renewal copyright interests, albeit after termination. No other provision in the Act provides for any other distributive scheme with respect to an author's surviving spouse and children for any copyright interest whatsoever, much less a scheme dictating that an author's surviving spouse and children will hold renewal copyright interests in equal shares. As

---

are no renewal provisions akin to those of § 304(a).

[9] A significant distinction between § 203(a) and § 304(c) is that, unlike § 304(c), § 203(a) does not provide a manner for widows or children to terminate interests they convey in a copyright.

such, § 203 and § 304(c) represent the best indication of congressional intent with respect to how renewal copyright interests should vest between a deceased author's surviving spouse and children *upon creation*. Specifically, the provisions suggest that Congress intended renewal copyrights to vest in disproportionate shares under § 304(a).

Several additional factors corroborate this conclusion. For instance, a survey of the manner in which the Copyright Act utilizes the term "vest" supports the disproportionate shares interpretation. "Vest" is not found frequently in the Copyright Act. The term first appears at 17 U.S.C. § 104A(a)(1)(A) & (b). Section 104A pertains to restored copyrights. Subsection 104A(a)(1)(A) merely provides that a copyright in a restored work vests automatically on the date of restoration. Subsection 104A(b), in turn, provides that a restored copyright vests initially in the author of the restored work. The term "vest" next appears at § 201, which states that a copyright will vest initially in the author of the work copyrighted and, for contributions to collected works, a copyright will vest in the author of the contribution that will be distinct from the copyright for the collected work. The next point at which "vest" arises in the Act, and the first time it refers to the rights of an author's surviving spouse and children, is at § 203(b). As discussed, § 203(b) provides that, after an author's transfer of a copyright interest is terminated by the author's widow and children under the termination provision, the rights terminated will vest in an author's widow and children in shares proportionate to their termination rights. Section 203(b) then describes how parties in which terminated rights have vested may alienate those rights. The term "vest" is next found, again in reference to the rights of an author's spouse and children, at § 304. At § 304(a), the term describes how and when copyrights will vest upon renewal. As previously discussed, the subsection provides that renewal copyrights will vest in an author's surviving spouse and children if the author is deceased at the time of renewal, but it does not explicitly state in what proportion the widow and children shall share the renewal copyright. At § 304(c), the term "vest" is used to describe who will obtain the rights to a renewal copyright if a previous transfer of that renewal copyright is terminated. As at § 203, § 304(c) provides that, when a terminated renewal copyright vests in an author's surviving spouse and children, it vests in shares of the same proportion as the termination rights provided the widow and children. The term "vested" appears again at § 701, but only in reference to the powers vested in the Copyright Office by law. "Vest" surfaces for the last time in the Act at § 1320 and refers to who owns the property right to a design protected by Chapter 13 of the Copyright Act. At no point in the Act does "vest" refer to copyrights being divided into equal shares. And when the Act explicitly provides for how copyright interests will vest in an author's surviving spouse and children when they are entitled to such interests, it provides that those interests will vest in disproportionate shares between the widow and the children. Applying the term "vest" consistently, particularly when in reference to the rights of an author's surviving widow and children, supports the disproportionate shares interpretation that a surviving spouse obtains a fifty-percent interest in a renewal copyright upon renewal, while an author's surviving children obtain equal shares in the remaining fifty-percent.

The disproportionate shares interpretation is also bolstered by the fact that an equal shares interpretation would produce an odd result. If we interpreted § 304(a) as providing for equal shares, the shares eventually held by a widow and her children would ultimately rest upon whether the author assigned copyright interests that vested prior to his death, or, instead, never assigned such interests or assigned interests that vested only after his death. In the case of the former, a surviving spouse would hold a fifty-percent interest in the event of the termination of that transferred renewal interest and the author's surviving children would share the remaining fifty-percent equally. In the case of the latter, all parties would share equally upon renewal of the copyright. No statutory language suggests why such a result should occur. In addition, no logic readily comes to mind to support disparate results under these two scenarios. Insofar as an equal shares interpretation would produce absurd results, it should be avoided. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available.").

The district court was not persuaded that the Copyright Act's termination provisions are sufficiently similar to § 304(a) so that renewal copyright interests should vest upon renewal in the same manner they vest upon termination. The principal basis for the district court's refusal to adopt this approach was its

understanding that termination can be effected only by the agreement of those possessing a majority of the termination interests, whereas renewal interests vest if any one of those entitled to such an interest exercises that right. Without further explanation, the court concluded that the fact that the termination interest is exercised differently than the renewal interest requires that such interests vest differently. First of all, the district court's reasoning contains a misapprehension of copyright law. A renewal copyright will automatically vest as of the last day of the original copyright in any person entitled to the renewal copyright even absent an affirmative act by any such person. *See* 17 U.S.C. § 304(a)(2)(B)(ii). No renewal copyright interest need be exercised to obtain ownership. Second, the district court's reasoning provides no explanation for why the distinction offered requires that the reversion of renewal copyrights upon termination and upon renewal differ.

The district court also noted that "the termination interest [is] a separate and distinct right." Termination is separate and distinct in the sense that it is exercised in a different manner than the renewal right. However, the aim of the termination provision is the same as that of the renewal provision. Both provisions seek to provide an author and his descendants the power to recapture ownership of a previously assigned copyright. Moreover, the termination right is necessarily distinct from the renewal interest because the termination interest, particularly as provided for in § 304(c), operates to enable the recapture of a previously assigned renewal interest. Finally, § 304(a) and § 304(c) are not entirely unrelated. Indeed, the two provisions are subsections of the same section of the Copyright Act. More significantly, the latter expressly references the former. In describing what transfers of renewal interests may be terminated, § 304(c) provides that any grant executed "by any of the persons designated by subsection (a)(1)(C) of this section, otherwise than by will, is subject to termination." Subsection 304(a)(1)(C) is the subsection that designates a deceased author's surviving spouse and children as being entitled to renewal and extension of a copyright.

As justification for ignoring § 304(c) when interpreting § 304(a), the district court relied considerably on the proposition that, if Congress intended for copyright interests to vest identically under each provision, it could have explicitly added such language to § 304(a) when it adopted § 304(c). The court concluded: "That Congress chose not to add similar language to Sec. 304(a) suggests that Congress did not consider the rights guaranteed under the two provisions to be similar." We do not ascribe any such substantive significance to the fact that Congress did not so amend the renewal provisions when it enacted § 304(c).[10] The failure of Congress to enact a particular provision or amendment can be linked to a myriad of hypothetical causes. Absent evidence suggesting otherwise, a court should not assume that any particular cause explains the inaction. *Pension Benefit Guaranty Corp. v. LTV Corp.*, 496 U.S. 633 (1990) is instructive. In *Pension Benefit*, the Supreme Court declined to attach any significance to Congress's failure to enact a proposed amendment to prior enacted legislation. In doing so, the Court noted that "Congressional inaction lacks 'persuasive significance' because 'several equally tenable inferences' may be drawn from such inaction, 'including the inference that the existing legislation already incorporated the offered change.'" *Id.* at 650 (quoting *United States v. Wise*, 370 U.S. 405, 411 (1962)). In this case, the district court inferred that, by not incorporating into § 304(a) the distributive scheme provided in § 304(c), Congress intended § 304(a) to operate differently. But we could just as easily infer that Congress assumed adopting § 304(c) would clarify the proper distributive scheme under § 304(a). The availability of such disparate inferences demonstrates that Congress's failure to adopt changes to § 304(a) when enacting § 304(c) should be accorded little, if any, significance.

Only one other court, aside from the district court, has directly ruled on the issue of the distribution of renewal copyright interests between a deceased author's widow and children upon renewal. *See Venegas-Hernandez v. Peer*, 283 F. Supp. 2d 491 (D. P.R. 2003). In *Venegas-Hernandez*, the court considered the

---

[10]Section 304(a) is a re-codification of the prior renewal provision, which was initially at 17 U.S.C. § 24 (1909). *See* H.R. No. 94-1476 ("Subsection (a) of section 304 reenacts and preserves the renewal provision, now in Section 24 of the statute . . . ."). The prior provision did not dictate in what proportion renewal interests should vest and the re-codification did not amend the provision to clarify this issue.

interest an author's widower held in copyrights renewed after her husband's death in relation to the interests held by the author's children. The widower argued that she was entitled to a fifty-percent interest and that the children were entitled to equal shares of the remaining fifty-percent interest. The children, of course, argued that all members of the renewal class shared equally in the renewed copyrights. The court determined that the widower and the children shared in the renewal copyrights equally. In doing so, the court rejected the widower's argument that § 304(c) of the Act should be read *in pari materia* with § 304(a).

In distinguishing § 304(c) from § 304(a), the court in *Venegas-Hernandez* noted that, under § 304(c), if an author bequeaths by will copyright renewal interests vested in him prior to his death, such grants are not subject to termination. 283 F. Supp. 2d at 504. Rather, the court noted, such renewal interests will transfer subject to the terms of the will. The court then merely asserted that "the termination provisions are meant to tackle factual circumstances materially different" from the renewal provisions. *Id*. While this assertion is certainly true, on the matter focused on by the court, the renewal and termination provisions are the same. Just as termination cannot be exercised against a renewal interest transferred by an author pursuant to his will, provided that the renewal interest vested in the author prior to his death, so are descendants' renewal interests null and void when an author bequeaths by will renewal interests vested in him prior to his death.

The *Venegas-Hernandez* court also recognized that, in a Committee Report originating from the House Committee on the Judiciary and relating to the 1976 amendments to the Copyright Act, the committee noted that "[i]t is not clear how the shares of a class of renewal beneficiaries are to be divided *under the existing law*." H.R. No. 94-1476 (emphasis added). The court concluded that this statement signified that, in adopting § 304(c) in the 1976 amendments, Congress did not intend the vesting of termination rights to dictate the manner in which renewal rights vest under the renewal provisions. *Venegas-Hernandez*, 283 F. Supp. 2d at 505. The statement does not mandate such a conclusion. First, the statement was made by a committee reporting on proposed legislation. The report merely stated that existing law – in other words, the law in existence prior to the adoption of the proposed legislation – was unclear as to how renewal interests are divided. Considering that the Copyright Act did not at that time, nor has it at any time, specified how renewal copyright interests are to be divided between an author's widower and her children upon renewal, such a statement was merely a recognition of fact. Second, the statement did not speculate as to what effect the adoption of § 304(c) would have on the division of renewal interests under § 304(a). Nor did it state that § 304(c) and § 304(a) should be construed wholly distinctly. At most, the statement can be read as signifying that the committee was unsure what, if any, effect § 304(c) would have on the interpretation or application of § 304(a). Even if the statement suggested that Congress believed that renewal interests vested in equal shares under the law prior to the amendments, such an interpretation would not be entitled to any special deference because the law then in effect was adopted in 1909. As the Supreme Court has noted, "the interpretation given by one Congress (or a committee or a Member thereof ) to an earlier statute is of little assistance in discerning the meaning of that statute." *Pub. Employees Ret. Sys. of Ohio v. Betts*, 492 U.S. 158, 168 (1989).

Turner presented many of the arguments utilized by the district court and the *Venegas-Hernandez* court in an attempt to distinguish § 304(a) from the Copyright Act's termination provisions. As we explained, none of these arguments is convincing. The only interpretation of § 304(a) remotely supported by the language of the Copyright Act itself is that renewal copyright interests should vest disproportionately. Recognizing the complete lack of express textual support in the Act for an equal shares interpretation, Turner also offers several extra-statutory arguments in favor of such an interpretation. We similarly find none of these arguments persuasive.

Turner first contends that *DeSylva* supports an equal shares interpretation. In *DeSylva*, the Supreme Court – interpreting a prior iteration of the Copyright Act – held that a deceased author's children's interest in a copyright renewed after the author's death vested upon renewal and was not dependent on whether the author's widow or widower was also deceased at the time of renewal. 351 U.S. at 580. In doing so, the Court stated that, "on the death of the author, the widow and children of the author succeed to the right of

renewal as a class, and are each entitled to share in the renewal term of the copyright." *Id*. Turner argues that, if a deceased author's spouse and children are entitled to renew copyrights as a class, as members of the same class they must share in the renewal copyrights equally. The district court found this argument to be persuasive, concluding that, "[i]f the members of the class are each entitled to share in the rights created, it follows logically that the class members will share equally of that right, absent any indication from Congress of a contrary intent." The court's deduction is unfounded, and Turner's argument is unpersuasive. First, *DeSylva* can only be read to hold that an author's surviving spouse and children are each entitled to share in a copyright renewed after the author's death. If the Supreme Court intended for its holding to dictate how renewal interests would be divided between an author's widow and children, it would have so held. Yet, the Court expressly declined to do so. *Id*. at 582 ("[T]here remains the question of what are the respective rights of the widow and child in the copyright renewals, once it is accepted that they both succeed to the renewals as members of the same class. Since the parties have not argued this point, and neither court has passed on it, we think it should not be decided at this time.").

Second, even assuming that – by holding that surviving spouses and children are entitled to renew copyrights as a class – the Court intimated that renewal copyright interests should vest equally between spouses and children, the Court made this suggestion *prior to the adoption of § 304(c) and § 203*. Sections 203 and 304(c) were adopted in 1976. *See* Act of Oct. 19, 1976, Pub. L. No. 94-553, 90 Stat. 2541 (1976); *see also Nimmer on Copyright* § 11.01[A]. *DeSylva* was decided in 1956. Thus, even if *DeSylva* suggests that Congress's intent at the time appeared to be that spouses and children hold equal shares in renewal copyright interests, the subsequent enactment of § 203 and § 304(c) provides evidence of a more recent and contrary intent. Any deductions or speculations in *DeSylva* as to how renewal copyright interests should vest upon creation are, therefore, outdated and uninstructive.[11] *DeSylva* would only have persuasive weight if we found that no portion of the Copyright Act provides any guidance as to how § 304(a) should be interpreted, which we do not find to be the case.

Finally, even if we assume *DeSylva* held that surviving spouses and children share equally in renewal copyrights (which it patently did not), it is unclear whether *DeSylva* still accurately describes the nature of the interest a deceased author's surviving spouse and children have in a renewal copyright. At the time of *DeSylva*, the Copyright Act did not address clearly whether an author's spouse and children could concurrently share in a copyright renewed after his death. The Court's holding in *DeSylva* that the parties held the right of renewal "as a class," and could consequently share in such renewal copyrights simultaneously, was an attempt to discern how Congress intended spouses and children to obtain copyright interests absent clarifying language. Subsequent to *DeSylva*, Congress enacted such clarifying language in the form of § 304(a)(2)(B), which made explicit in the Act itself that an author's widow and children could hold interests in a renewal copyright concurrently. *See* Act of Oct. 19, 1976, Pub. L. No. 94-553, 90 Stat. 2541 (1976). Section 304(a)(2)(B) contains no language whatsoever suggesting that an author's surviving spouse and children, or any other parties entitled to a renewal copyright interest, share such an interest as a class or that they constitute a class for any purposes. Moreover, by providing that the renewal copyright interests vest in "any person" entitled to renewal under § 304(a)(1)(C), the provision suggests that renewal copyright interests vest in individuals and are not taken by or vested as a class. For all of these reasons, we decline to view *DeSylva* as persuasive authority for an equal shares interpretation of § 304(a).

Turner next argues that *Nimmer on Copyright*, the leading legal treatise on copyright law, also supports an equal shares interpretation of § 304(a). *Nimmer on Copyright* does suggest that renewal copyrights should vest equally between a deceased author's surviving spouse and children. However, we do not find its logic persuasive. The treatise states: "Because the [Copyright] Act fails to indicate any internal division for what has been established as a single class, it appears more logical to regard all

---

[11] Other courts that have assumed an author's surviving spouse and children hold equal shares in copyrights renewed after the author's death have also done so prior to the adoption of § 203 and § 304(c). *See Bartok v. Boosey & Hawkes, Inc.*, 523 F.2d 941, 943 n.2 (2d Cir. 1975); *Hill & Range Songs, Inc. v. Fred Rose Music, Inc.*, 403 F. Supp. 420, 436 (M.D. Tenn. 1975). Consequently, these cases are also uninstructive.

members of the class – widows and children – alike, as equally sharing claimants." *Nimmer on Copyright* § 9.04[A][1]. By stating that widows and children constitute a class, the treatise commits the same fallacy as the district court in assuming that *DeSylva* continues to accurately describe how an author's surviving spouse and children share in renewal copyrights. Moreover, the treatise does not the address relationship between § 304(a) and § 304(c), much less the relationship between § 304(a) and § 203. Rather, the treatise merely assumes no other provisions are relevant to the interpretation of § 304(a) and concludes that a reasonable interpretation of that provision is that widows and children take renewal copyrights equally. This conclusion, however, is less than compelling. The treatise essentially admits that the proper interpretation of § 304(a) is unclear and that an interpretation that renewal copyrights interests shall be divided equally between a deceased author's surviving spouse and children is as reasonable an interpretation as any other. We will not rely on such an unenthusiastic conclusion to serve alone as the basis of our judicial opinion.

The last authority Turner submits in support of an equal shares interpretation is an opinion letter from the Register of Copyrights written to a member of the United States House of Representatives in response to an inquiry about whether the manner in which copyright interests vest upon renewal under § 304(a) should be clarified by legislation. Letter from Marybeth Peters, The Register of Copyrights of the United States of America, to Representative Howard L. Berman, United States House of Representatives (Sept. 11, 2003) (hereinafter "Peters Letter"). While statutory interpretations adopted by the Copyright Office pursuant to authority delegated it by Congress and which enjoy the force of law are entitled to deference if reasonable, *see United States v. Mead Corp.*, 533 U.S. 218, 227 (2001); *Cablevision Sys. Dev. Co. v. Motion Picture Ass'n of Am., Inc.*, 836 F.2d 599, 607-10 (D.C. Cir. 1988), interpretations suggested in opinion letters – which lack the force of law – are entitled to respect only insofar as they are persuasive. *See Christensen v. Harris County*, 529 U.S. 576, 587 (2000). We are not persuaded by the Register's opinion letter that an equal shares interpretation is the most reasonable interpretation of § 304(a).

The letter, which admits that there is not a "definitive answer" to the proper interpretation of § 304(a) and that an equal shares interpretation "is not the only plausible reading" of the provision, Peters Letter at 1-2, offers only two arguments in favor of an equal shares interpretation that we have not yet addressed. First, the letter suggests that § 304(c), by granting spouses fifty-percent of a deceased author's termination interest, intended only to grant spouses control over whether the grant of a renewal copyright could be terminated. According to the letter, tying the proportion in which renewal interests vested upon termination to the proportion in which eligible parties held termination interests was of secondary importance and, hence, should not control the interpretation of § 304(a), a completely separate section. This argument is not persuasive because, even if providing that renewal interests vested in disproportionate shares after termination was an afterthought, this method of distribution remains the only method by which the Copyright Act explicitly provides for the distribution of renewal copyright interests and the only indication of Congress's intent on this matter.

Second, the letter claims an equal shares interpretation is most reasonable because legislative history suggests that, in enacting § 304(a), Congress intended to protect then-existing expectancies in renewal copyrights. *See, e.g.*, H.R. Rep. 94-1476 ("Subsection (a) of section 304 reenacts and preserves the renewal provision . . . . A great many of the present expectancies in these cases are the subject of existing contracts, and it would be unfair and immensely confusing to cut off or alter these interests."). The letter suggests it was Congress's clear intent to preserve expectancies in the proportional division of renewal copyrights, but this characterization is misleading. If the renewal provisions had not been preserved at § 304(a) for copyrights already subsisting in 1978, then § 203 would have governed those copyrights, effectively eliminating any prospective renewal copyrights in those works because § 203 abandoned the renewal scheme. Section 304(a) was retained to ensure that those who expected to hold an interest in a renewal copyright were not deprived of such an interest altogether. Indeed, in discussing the rationale for maintaining the renewal scheme for copyrights already in existence at the time § 203 was enacted, the Copyright Office explained:

> Certain persons will have acquired expectancies of the future renewal rights under the present law – expectancies that might accrue to them when the time for renewal arrives. . . . Substantial sums have been invested in some of these expectancies. *To apply the new law would deprive potential claimants and their assignees of their expectancies in many cases. Consequently, we believe that the present provisions as to who may renew should remain in effect for preexisting copyrights in their first term.*

Copyright Law Revision: Report of the Register of Copyrights on the General Revision of the U.S. Copyright Law, at 57 (1961) (emphasis added); *see also* H.R. Rep. 94-1476 ("Subsection (a) of section 304 reenacts and preserves the renewal provision . . . .  A great many of the present expectancies in these cases are the subject of existing contracts, and it would be unfair and immensely confusing to cut off or alter these interests."); Copyright Law Revision, Part 6, Supplementary Report of the Register of Copyrights on the General Revision of the U.S. Copyright Law: 1965 Revision Bill, at 94 (1965) ("[W]orks in their first term are now subject to specific renewal expectancies, many of which have been bargained for or sold.  We believe it would be unjust *to destroy* these expectancies . . . .") (emphasis added).  The expectancies Congress intended to protect were expectancies in the eventual existence of renewal copyrights; there is no indication that Congress intended to protect an expectancy that renewal copyrights would vest in equal shares between a deceased author's surviving spouse and children upon renewal.

Even if Congress intended to protect expectancies in the proportional division of renewal copyrights by preserving the renewal scheme, we have been provided no evidence of what such expectancies were, much less any evidence that it was well-settled at the time it was expected that renewal copyrights would be shared equally between a deceased author's surviving spouse and children.  Case law is similarly uninstructive.  *DeSylva*, the only Supreme Court case addressing renewal copyright interests, sent mixed signals on the issue of division of those interests.  The case refrained from deciding the issue, but did hold that surviving spouses and children shared renewal copyrights as a class, which some may have interpreted as requiring that these copyrights be divided equally.  On the other hand, *DeSylva* looked to state law to determine whether an illegitimate child was included within the definition of "children" under the Act, suggesting that state law might also govern the distribution of renewal copyrights under the Act, in which case renewal copyrights would often be shared disproportionately.  *See also Nimmer on Copyright* § 9.04[A][1] (addressing whether it is desirable to follow *DeSylva* and look to state law to determine the proper division of renewal interests under § 304(a)).  In other words, *DeSylva* does not provide conclusive support for either equal shares or disproportionate shares expectancies.  Finally, the letter itself undermines its own proposition.  After suggesting that an equal shares interpretation of § 304(a) is best because of Congress's intent to protect expectancies, the letter admits that the expectations of surviving children and spouses are even currently unclear.  Peters Letter at 6 (stating that, if Congress were to clarify § 304(a) by statute, it should conduct "a factfinding exercise to determine what are the actual practices and expectations among authors and their spouses and children").

In sum, the various authorities and rationales offered in support of an equal shares interpretation do not persuade us that we should disregard § 304(c) in construing § 304(a) or that an equal shares interpretation of § 304(a) more closely approximates congressional intent than a disproportionate shares interpretation of that provision.

### 2.  History of the Renewal and Termination Provisions

The history of the Copyright Act's renewal and termination provisions further supports the conclusion that a deceased author's surviving spouse and children should take disproportionate shares upon renewal of a copyright after the author's death.  The renewal provision of the Copyright Act originates with the original Copyright Act of 1790, which was adopted by the first Congress and allowed for the author alone to secure a 14-year renewal term of his original copyright, provided he was alive on the first day of the renewal.  Act of May 31, 1790, 1 Stat. 124.  In 1831, the renewal provision was amended to grant a renewal right to an author's surviving spouse and children in the event the author was deceased at the time

the original copyright expired. Act of Feb. 3, 1831, 4 Stat. 436. The language of the provision was somewhat revised in 1870, but its substance remained the same. Act of July 8, 1870, 16 Stat. 212. Then, in 1909, the renewal provision was amended to grant additional parties an entitlement to the renewal copyright of a deceased author's work provided that the author and her spouse and children were deceased at the time of renewal. 17 U.S.C. § 24 (1909). Specifically, the amendment granted a deceased author's executors and, in the absence of a will, her next of kin the right to the renewal copyright in her work if the author's widower and children were also deceased at the time of renewal. *Id.* The amendment also extended the renewal term from fourteen years to twenty-eight years. *Id.*

It is commonly recognized that the renewal provision was initially adopted to provide authors the opportunity to recapture ownership of a copyright alienated during its original term. At the time an author initially copyrights a work, the copyright may be of little value and an assignment of the work will bring little economic benefit to the author. However, over time, the value of the copyright may increase as the work becomes more well-known and marketable. The renewal copyright concept allows the author to recapture ownership of the copyright for this work and then obtain a greater economic benefit from its exploitation. *See* H.R. Rep. No. 2222, 60th Cong., 2d Sess.; *see also Nimmer on Copyright* § 9.02. As the Second Circuit has explained, "[t]he reason for including a renewal term in the Copyright Act was to permit an author who sold the rights in his work for little consideration, when measured against the work's subsequent success, to enjoy a second opportunity with more bargaining power to reap the full value of the work." *Woods v. Bourne Co.*, 60 F.3d 978, 982 (2d Cir. 1995). This purpose was frustrated by the Supreme Court in *Fisher Music* because, in that case, the Court recognized that an author can assign away his renewal copyright interest prior to its vesting and that he is bound by such an assignment if the renewal interest vests prior to his death. In essence, the Court allowed an author to assign away his second chance at ownership of a copyright while assigning his right to the original copyright. *See Nimmer on Copyright* § 11.01[A]. Prior to the adoption of the termination provision, then, if an author assigned away his renewal copyright interest and that interest vested prior to the author's death, the assignment was valid and neither the author nor his heirs could obtain a renewal interest in a work so assigned. The only means by which descendants could obtain title to such an assigned renewal interest was if the author died before the renewal interest vested in him, in which instance the assignment was not executed and the renewal interests vested in the author's descendants pursuant to § 304(a).

In its 1976 amendments to the Copyright Act, Congress attempted to restore to authors and their descendants a second opportunity to recapture copyrights, notwithstanding *Fisher Music*, by adopting the termination provisions at 17 U.S.C. § 304(c). *See Nimmer on Copyright* § 11.01[A]. As noted by the Supreme Court, the termination right granted in § 304(c) "was expressly intended to relieve authors of the consequences of ill-advised and unremunerative grants that had been made before the author had a fair opportunity to appreciate the true value of his work product." *Mills Music*, 469 U.S. at 172-73. In granting authors and their descendants termination rights, Congress provided them the opportunity to reclaim renewal interests even after such interests had been vested in and assigned by the author. As Nimmer notes, the aim of the termination provision, like that of the renewal provision, is to "achiev[e] a reversion of rights." *Nimmer on Copyright* § 11.01[A].

In essence, then, both the renewal provision and the termination provision were intended to grant authors and their descendants the right to reclaim ownership over an alienated copyright. Furthermore, the termination provision was adopted because the second chance Congress intended to provide authors under the renewal provisions was frustrated by the fact that the Court in *Fisher Music* found that an author could assign his future renewal interest and could be bound by that assignment if the renewal vested in him during his life. The termination provisions, particularly § 304(c), attempt to provide descendants and authors the same opportunity to reclaim ownership of a copyright that could have been reclaimed under the renewal provisions but for a previous assignment of the renewal interests by the author. Insofar as the termination provisions grant descendants a similar chance to recapture ownership over copyright interests as the renewal provision, it logically follows that the recaptured rights should vest in the same way under each provision.

### 3. Conclusion

The interpretive interests of adhering to legislative intent and of construing a statute consistently and cohesively dictate that we interpret § 304(a) as providing that, when the copyright to an author's work is renewed after the author's death and that author is survived by a spouse and children, the surviving spouse holds a fifty-percent share in the renewal copyright and the surviving children hold equal divided shares in the remaining fifty-percent. This interpretation, we believe, is most consistent with the Copyright Act in its entirety and also with the history and purpose of the Act's renewal provisions. Congress has clearly indicated that, whenever grants of renewal interests are terminated, such interests will vest in disproportionate shares between a deceased author's surviving spouse and children. *See* 17 U.S.C. §§ 203 & 304(c). A deduction, absent contrary statutory authority, that such interests should vest any differently upon creation would be unfounded and illogical.

The practical result of our interpretation of § 304(a) is that Turner holds a 7.14% interest in the renewal copyright at issue and, as the assignee of the remaining interests in the renewal copyrights, RMMI holds a 92.86% interest in those copyrights.

## B. Statute of Limitations/Laches

In its motion for summary judgment, RMMI asserted that the statute of limitations and laches precluded Turner from recovering any royalties that accumulated prior to July 9, 1998.[12] The district court refused to consider this argument, noting:

> The issue of whether Turner is entitled to recover renewal royalties, other than those interpleaded by BMI, has not been raised by either RMMI's or Turner's motion for summary judgment. Therefore, the Court takes no position on whether Turner has a claim against RMMI for a portion of renewal royalties previously received by RMMI (and notes that Turner has not asserted such a claim against RMMI in this action) or whether that claim would be barred in whole or in part by the statute of limitations or the doctrine of laches.

RMMI thereafter filed a motion pursuant to Fed. R. Civ. P. 59(e) asking the court to alter or amend its judgment. RMMI argued that the court erred by failing to consider whether the statute of limitations or laches barred Turner from asserting claims for royalties against RMMI. The district court denied that motion. On appeal, RMMI argues that this denial was in error because RMMI continuously asserted that Turner was barred from recovering any royalties earned by the renewal copyrights prior to July 9, 1998.

The district court did not err in refusing to alter or amend its judgment. Section 507(b) of the Copyright Act provides a statute of limitations for claims asserted under the Act. *Nimmer on Copyright* § 12.05; *see also Mihalek Corp. v. Michigan*, 814 F.2d 290, 297 (6th Cir. 1987) (classifying 17 U.S.C. § 507(b) as presenting a statute of limitations). An assertion of a statute of limitations is an affirmative defense that must be properly raised. *See* Fed. R. Civ. P. 8(c). Likewise, laches is an equitable remedy that must be properly raised as an affirmative defense. *See Ruiz v. Shelby County Sheriff's Dep't.*, 725 F.2d 388,

---

[12]The statute of limitations under the Copyright Act is three years from the accrual of the claim in question. 17 U.S.C. § 507(b). According to RMMI, Turner was aware of her entitlement to an interest in the renewed copyrights at least by 1995, as evidenced by a letter written by her attorney. RMMI asserts that Turner did not assert a claim for royalties prior to her response to RMMI's cross-claim in this action, which was filed on July 9, 2001. RMMI argues that, while Turner's 2001 claim suffices to meet the statute of limitations for royalties accruing since July 8, 1998, Turner is barred by the statute of limitations and laches from asserting a claim for royalties any time prior to that date because her claim of July 9, 2001, would necessarily be asserted more than three years after the accrual of such royalties.

393 (6th Cir. 1984).[13] RMMI has asserted these affirmative defenses against Turner. Turner, however, does not contest the district court's finding that she did not present a claim against RMMI for royalties already paid to RMMI by BMI derived from the licensing of the renewed copyrights at issue. Hence, we accept the district court's finding. *See Little*, 265 F.3d at 361. Moreover, this determination is supported by the pleadings. In her motion for summary judgment, Turner only asserted entitlement to the funds interpleaded by BMI. And, on appeal, Turner concedes that she has asserted no claim against RMMI.

Because Turner has presented no claim against RMMI for royalties, RMMI has no claim of Turner's against which to assert the affirmative defenses of laches or the statute of limitations. Turner's only claim is against BMI for the interpleaded funds. The affirmative defenses are for BMI, not RMMI, to assert. Therefore, we affirm the district court's denial of RMMI's motion to alter or amend its judgment on the issue of whether Turner was barred from asserting claims for certain royalties against RMMI.

## III.

For the foregoing reasons, we reverse the judgment of the district court, grant summary judgment for RMMI, and remand the case for proceedings consistent with this opinion.

---

[13] Although circuits are split as to whether laches is available as a defense under the Copyright Act, *see Nimmer on Copyright* § 12.06, laches is available as an affirmative defense in a copyright action in the Sixth Circuit. *See Hoste v. Radio Corp. of Am.*, 654 F.2d 11 (6th Cir. 1981).

---

**DISSENT**

---

MARTHA CRAIG DAUGHTREY, dissenting. I would affirm the judgment of the district court, for reasons given in Judge Campbell's well-reasoned opinion. That opinion looks to the plain meaning of the controlling statute, 17 U.S.C. § 304(a)(1)(C), which devolves rights to copyright renewal if the author is not living on "the widow, widower, or children of the author" without specifying the disproportionate shares read into the provision by the majority here. I see no reason for us to do so in the absence of a Congressional directive, or – at minimum – a determination that the language used in the statute is ambiguous. It clearly is not.

Moreover, Congress certainly knew how to create a disproportional distribution scheme, as evidenced by the provisions in § 304(c). That it did not employ similar language in § 304(a) can only mean that it did not intend that section to mandate disproportionality.

I find instructive the Supreme Court's opinion in *DeSylva v. Ballentine*, 351 U.S. 570 (1956), in which the Court held that the phrase "widow, widower or children" found in § 24 of the Copyright Act of 1909 created a class of persons who "succeed to the right of renewal as a class, and are each entitled to share in the renewal of the copyright." *Id*. at 580. The Court explained, "[P]utting each word in its proper context[,] we are unable to say, as the widow contends we should, that the clear purport of the clause in question is the same as if it read 'or the widow, or widower, if the author be not living, or the children if the author, and widow or widower, be not living.'" *Id*. at 573. Likewise, I conclude that the district court was correct in finding that § 304(a) creates a class whose members take equally, in the absence of Congressional instruction to the contrary. That the court in *DeSylva* said no more about the distribution was not caused by any disinclination to decide or instruct upon the issue, as the majority now suggests, but rather a recognition that they need not say more because the issue had not been presented. *See id*. at 582 (noting that although "there remains the question of what are the respective rights of the widow and child in the copyright renewals, once it is accepted that they both succeed to the renewals as members of the same class . . . , [s]ince the parties have not argued this point, and neither court below has passed on it, we think it should not be decided at this time").

This interpretation is also endorsed by the preeminent legal treatise on copyright, *Nimmer on Copyright*. Addressing divisions within the "widow-children class," the authors note that "the Supreme Court in *DeSylva* expressly left open the question as to whether the widow and children share equally on a per capita basis or whether the widow is entitled to a one-half interest, and the children on a per stirpes basis share equally in the remaining half," but add that "it appears to be more logical to regard all members of the class – widow and children – alike, as sharing claimants." 3 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 9.04[A][1]. Also persuasive is the opinion letter from the Register of Copyrights, endorsing the result reached by the district court in this case.

Finally, I am not inclined to embrace the majority's *in pari materia* analysis. Interpreting the statute in the manner suggested would make sense only if the statute had been adopted as a whole. For this reason, I also find *Pension Benefit Guaranty Corp. v. LTV Corp.*, 496 U.S. 633 (1990), readily distinguishable from the current case. The failure of Congress to enact a proposed amendment in *Pension Benefit* is simply not the equivalent of the legislative history in this case, in which Congress did amend an existing section of the statute, namely § 304(c), to create a distinction that it did not extend to the statutory provision at issue here, § 304(a). *Pension Benefit* cannot be read to counsel against the distinction between these two provisions by invoking the *in pari materia* doctrine to read them as a whole. To do so would be to create a judicial fabrication that was not intended by Congress. Indeed, the length and the complexity of the majority opinion indicate how much strain is required to fabricate a distribution system that simply does not exist in the statute.

Rather than engage in what seems to me to constitute a clear case of judicial activism, I respectfully dissent.